[Civ. No. 66356. Second Dist., Div. Seven. Oct. 27, 1983.]

MARVIN LAZAR, Plaintiff and Respondent, v.
THERMAL EQUIPMENT CORPORATION, Defendant and Appellant.

COUNSEL

Peterson, Lawrence, Bower & Barbaran, Horvitz & Greines, Ellis J. Horvitz and Marilyn L. Hoffman for Defendant and Appellant.

Grayson, Gross, Friedman & Phillips and Saul Grayson for Plaintiff and Respondent.

OPINION

**SCHAUER, P. J.**—Defendant, Thermal Equipment Corporation, appeals from a judgment notwithstanding the verdict granted plaintiff, Marvin Lazar. The primary issue on appeal involves the applicability of the doctrine of respondeat superior in circumstances where defendant's employee, Richard Lanno, injured plaintiff while the employee was driving his employer's truck on a personal errand on his way home from work. We hold that the employee was within the scope of his employment and affirm.

*Facts*

On March 5, 1976, Richard Lanno, an employee of defendant Thermal Equipment Company (Thermal), finished work and left Thermal's business

premises. Lanno, driving a truck owned by defendant, headed in a direction away from both the plant and his home; he testified that he planned to stop at a store, purchase something, and then go to his home. Before reaching this store, the identity of which Lanno could not recall at trial, Lanno struck the vehicle driven by plaintiff-respondent Lazar, causing damage to Lazar's car and person.

Lanno was employed as a project engineer for Thermal, which was a manufacturer of heating equipment and pressure vessels for the aerospace industry. In connection with his job, Lanno testified that he was sometimes required to proceed from his home directly to a job site in the mornings. In addition, Lanno testified that he was constantly on call as a trouble-shooter. Accordingly, Thermal's patrons would occasionally call him at his home, after hours and on weekends. In order to answer these calls, Lanno required the company truck in which he sometimes carried tools; if it was not at his home, he would stop at Thermal's premises to pick up needed tools on the way to answer the call.

In order to facilitate these duties, Thermal allowed Lanno to take the company truck home with him on a daily basis. In addition, Thermal provided Lanno with gasoline for the truck, and allowed him to use it for personal purposes. Lanno testified that use of the truck was considered a "fringe benefit," and that he was the only one of Thermal's employees who was regularly provided a company vehicle to take home.

On February 9, 1977, plaintiff instituted suit against defendant, alleging that Lanno was acting in the scope of his employment and with defendant's permission at the time the accident occurred. A jury trial ensued. The only evidence presented at this trial pertaining to whether Lanno was acting in the scope of his employment was the testimony of Lanno himself.

At the conclusion of the trial, the court refused plaintiff's proposed instruction that Lanno was acting within the scope of his employment at the time of the accident. Instead the court gave a general instruction regarding the determination of the scope of employment.

The jury returned a verdict in favor of plaintiff in the amount of $81,000. The jury also, however, made a special finding that Lanno was not acting within the scope of his employment at the time of the accident.

Pursuant to a motion by defendant, the trial court reduced the verdict in favor of plaintiff to $15,000, the statutory limit under section 17151 of the Vehicle Code, the "permissive use" statute.

Plaintiff later filed a motion for a judgment notwithstanding the verdict and for a new trial, claiming that the jury should have been instructed that, as a matter of law, Lanno was acting within the scope of his employment at the time of the accident. The trial court accepted the plaintiff's reasoning and granted the judgment notwithstanding the verdict, setting aside its earlier amended judgment and entering judgment against Thermal in the amount of $81,000.

Thermal appeals, claiming the judgment notwithstanding the verdict was improperly granted, since it was error to conclude, as a matter of law, that Lanno was acting in the scope of his employment at the relevant time.

*Standard for review of judgment notwithstanding the verdict.*

■ The trial court has the power to enter a judgment notwithstanding the verdict where the evidence is " 'undisputed and of such conclusive character that the court, in the exercise of a sound judicial discretion, will be compelled to set aside a verdict returned in opposition to it.' " (*Washer* v. *Bank of America* (1948) 87 Cal.App.2d 501, 506 [197 P.2d 202].) Otherwise stated, such a judgment may be granted only if there is no " ' "substantial evidence, or reasonable inferences to be drawn therefrom, in support of the verdict. . . ." ' " (*Clemmer* v. *Hartford Insurance Co.* (1978) 22 Cal.3d 865, 878 [151 Cal.Rptr. 285, 587 P.2d 1098].)

*The judgment notwithstanding the verdict was properly granted.*

■ Under the doctrine of respondeat superior, an employer is responsible for the torts of his employee if these torts are committed within the scope of employment. (Civ. Code, § 2338; *Johnston* v. *Long* (1947) 30 Cal.2d 54, 61 [181 P.2d 645].) ■ The "going and coming" rule acts to limit an employer's liability under respondeat superior. This rule deems an employee's actions to be outside the scope of employment when these actions occur while the employee is going to or returning from work. (*Carnes* v. *Pacific Gas & Elec. Co.* (1937) 21 Cal.App.2d 568, 571 [69 P.2d 998].) The "going and coming" rule, in turn, has been limited in recent years. Under the modern rule, if the employee's trip to or from work "involves an incidental benefit to the employer, not common to commute trips made by ordinary members of the work force," the "going and coming" rule will not apply. (*Hinman* v. *Westinghouse Elec. Co.* (1970) 2 Cal.3d 956 at p. 962 [88 Cal.Rptr. 188, 471 P.2d 988].) Thus in *Hinman, supra,* it was held that the "going and coming" rule did not apply where the employer had made the commute part of the workday by compensating the employee for his travel time. Similarly, in *Huntsinger* v. *Glass Containers Corp.* (1972) 22 Cal.App.3d 803 [99 Cal.Rptr. 666], an employee

was required to drive to and from work in order to have his vehicle available for company business. The court held that these circumstances, if confirmed by a jury, would support a finding that the employee's commute conferred an incidental benefit on the employer; a jury could therefore find that the commute fell within the scope of employment.

In the case at bench, the trial court was presented with uncontroverted evidence that Thermal derived a special benefit from Lanno's commute. This commute was made in the company vehicle, and an object of the commute was to transport the vehicle to Lanno's home where it would be at the ready for business use in case Lanno received emergency after-hours calls for repair from the employer's customers. In traveling to and from work, Lanno was thus acting in the scope of his employment, conferring a tangible benefit on his employer; the "going and coming" rule is thus inapplicable.

A further issue, however, is presented in this case, an issue which the courts in both *Hinman* and *Huntsinger, supra,* anticipated but refused to decide. In the case at bench, Lanno decided that, before going home, he would stop at a shop and buy a certain, now forgotten, item. To further complicate the question, this shop and item were located in the opposite direction from Lanno's home.

This question appears to be one of first impression under the modern doctrine of respondeat superior. In *Hinman* v. *Westinghouse Elec. Co., supra,* 2 Cal.3d 956, where the California Supreme Court articulated the modern theory of the doctrine and extended the doctrine to torts committed by employees during compensated travel time, the court noted: "It is unnecessary to determine the appropriate rule to be applied if the employee had used the [compensated travel] time for other purposes." (*Id.* at p. 962.) Similarly, in *Huntsinger* v. *Glass Containers Corp., supra,* 22 Cal.App.3d 803, 810, the court stated: "We do not deal, of course, with a case in which the employee was not directly driving home but was engaged on some errand of his own." We therefore take a broad perspective and examine the rationale for the modern doctrine of respondeat superior before determining whether it applies to the facts before us.

The modern justification for the doctrine of respondeat superior was stated by Dean Prosser and, since *Hinman,* has been much quoted in California case law: "Although earlier authorities sought to justify the *respondeat superior* doctrine on such theories as 'control' by the master of the servant, the master's 'privilege' in being permitted to employ another, the third party's innocence in comparison to the master's selection of the servant, or the master's 'deep pocket' to pay for the loss, 'the modern justification for

vicarious liability is a rule of policy, a deliberate allocation of a risk. The losses caused by the torts of employees, which as a practical matter are sure to occur in the conduct of the employer's enterprise, are placed upon that enterprise itself, as a required cost of doing business. They are placed upon the employer because, having engaged in an enterprise which will, on the basis of past experience, involve harm to others through the torts of employees, and sought to profit by it, it is just that he, rather than the innocent injured plaintiff, should bear them; and because he is better able to absorb them, and to distribute them, through prices, rates or liability insurance, to the public, and so to shift them to society, to the community at large.' " (*Hinman* v. *Westinghouse Elec. Co.*, *supra*, 2 Cal.3d 956, 959-960, quoting Prosser, Law of Torts (3d ed. 1964) p. 471, fns. omitted.) Similarly, Harper and James stated the focus of the doctrine thus: " 'We are not here looking for the master's fault but rather for risks that may fairly be regarded as typical of or broadly incidental to the enterprise he has undertaken. . . . Further, we are not looking for that which can and should reasonably be avoided, but with the more or less inevitable toll of a lawful enterprise.' " (2 Harper and James, The Law of Torts (1956) pp. 1376-1377, quoted in *Hinman* v. *Westinghouse Elec. Co.*, *supra*, 2 Cal.3d at p. 960.) ▪ Categorization of an employee's action as within or outside the *scope of employment* thus begins with a question of foreseeability, i.e., whether the accident is part of the inevitable toll of a lawful enterprise.

This foreseeability analysis was emphasized in *Rodgers* v. *Kemper Constr. Co.* (1975) 50 Cal.App.3d 608 [124 Cal.Rptr. 143]. There, an employee was injured in a fight between employees on the employer's premises. As a matter of mutual convenience, the employer had allowed the employees to stay on its premises long after the workday ended; the employees drank three or four beers apiece and a fight ensued when one refused to give the others a ride on a piece of heavy equipment. Rather than searching for nice distinctions which would place the employees' actions in or outside of the scope of employment, the *Rodgers* court spoke in terms of foreseeability: "One way to determine whether the risk is inherent in, or created by, an enterprise is to ask whether the actual occurrence was a generally foreseeable consequence of the activity. However, 'foreseeability' in this context must be distinguished from 'foreseeability' as a test for negligence. In the latter sense 'foreseeable' means a level of probability which would lead a prudent person to take effective precautions whereas 'foreseeability' as a test for *respondeat superior* merely means that in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business." (*Rodgers* v. *Kemper Constr. Co.*, *supra*, 50 Cal.App.3d 608, 618-619.)

One traditional means of defining this foreseeability is seen in the distinction between minor "deviations" and substantial "departures" from the employer's business. The former are deemed foreseeable and remain within the scope of employment; the latter are unforeseeable and take the employee outside the scope of his employment.

Witkin describes the traditional distinction as follows: "The question is often one of fact, and the rule now established is that only a *substantial* deviation or *departure* takes the employee outside the scope of his employment. If the main purpose of his activity is still the employer's business, it does not cease to be within the scope of the employment by reason of incidental personal acts, slight delays, or deflections from the most direct route. The term 'deviation' is ordinarily used to describe these minor deflections, and 'departure' to describe the abandonment which takes the acts outside the scope of employment." (1 Witkin, Summary of Cal. Law (8th ed. 1973) Agency and Employment, § 166, p. 765.) More recently, the test was stated in this way: "In assessing whether an employee's wrongful act was required by or incidental to his duties, the law defines occupational duties broadly. The fact that an employee is not engaged in the ultimate object of his employment at the time of his wrongful act does not preclude attribution of liability to an employer. (*Kish* v. *California S. Automobile Assn.* (1922) 190 Cal. 246, 249 [212 P. 27].) For example, acts necessary to the comfort, convenience, health, and welfare of the employee while at work, though strictly personal to himself and not acts of service, do not take him outside the scope of his employment." (*Alma W.* v. *Oakland Unified School Dist.* (1981) 123 Cal.App.3d 133, 139 [176 Cal.Rptr. 287].)

In the case at bench, then, we are asked to decide whether Lanno's personal errand was a foreseeable deviation from the scope of his employment, or whether evidence or inferences therefrom have been presented which would lead a jury to believe that this errand was an unforeseeable, substantial departure from his duties. We hold that Lanno's deviation was a foreseeable and minor deviation.

*Lanno's deviation was minor.*

The evidence presented to the trial court was not controverted. Lanno testified that on the day of the accident he left work and headed away from his home, planning to buy an item and then return directly home. The evidence thus clearly showed that Lanno planned a minor errand to be carried out, broadly speaking, on the way home. Lanno further testified that this type of errand occurred with his employer's permission. No evidence was presented, nor could any inference be drawn from the evidence, showing

that Lanno had any other object in mind that day than a brief stop at a store before going home.

The evidence, then, leads ineluctably to the conclusion that Lanno's errand was a minor deviation from his employer's business. While the specific act was one "strictly personal" to Lanno, it was "necessary to his convenience" under the above-quoted standard from *Alma W. v. Oakland Unified School Dist., supra,* 123 Cal.App.3d 133. While this standard was suggested for deviations "at work," we think it is applicable to deviations made on the way home, in the employer's vehicle, when the trip home benefits the employer. Here, it would have been unreasonable and inconvenient for Lanno to drive his truck home, stop there, then return to purchase the needed item, passing work on the way. The decision to stop to buy the item on the way home was one reasonably necessary to Lanno's comfort and convenience. For this reason the detour must be considered a minor deviation.

*Lanno's deviation was foreseeable.*

The detour was foreseeable for much the same reason. While a decision to stop at a party, or a bar, or to begin a vacation, might not have been foreseeable, we can think of no conduct more predictable than an employee's stopping at a store to purchase a few items on the way home. Where, as here, the trip home is made for the benefit of the employer, in the employer's vehicle, accidents occurring during such minor and foreseeable deviations become part of the "inevitable toll of a lawful enterprise."

No evidence or inference was presented in the trial court showing that Lanno's deviation was for any purpose other than to stop at a store before returning home. Since we find such a deviation to be minor and foreseeable, under the standard set forth in *Clemmer v. Hartford Insurance Co., supra,* 22 Cal.3d 865, 877-878, the judgment notwithstanding the verdict was properly granted. (See also *Golden West Broadcasters, Inc. v. Superior Court* (1981) 114 Cal.App.3d 947, 956 [171 Cal.Rptr. 95]; *Munyon v. Ole's Inc.* (1982) 136 Cal.App.3d 697, 701 [184 Cal.Rptr. 424].)

Finally, we note that Thermal makes much of the fact that Lanno was headed in the direction opposite his home at the time of the accident. Under the traditional doctrine of respondeat superior, Thermal argues, a trip in such direction cannot be regarded as a slight deviation. (See, e.g., *Gordoy v. Flaherty* (1937) 9 Cal.2d 716, 717 [72 P.2d 538]; *Cain v. Marquez* (1939) 31 Cal.App.2d 430, 436 [88 P.2d 200].) We note, however, the admonition in *Ryan v. Farrell* (1929) 208 Cal. 200, 204 [280 P. 945]: "It is the established rule in this jurisdiction that where the servant is combining

his own business with that of his master, or attending to both at substantially the same time, no nice inquiry will be made as to which business the servant was actually engaged in when a third person was injured . . . ." Defendant's emphasis on Lanno's direction at the time of the accident asks us to elevate just such a nice inquiry into the decisive issue of this case. An employer's liability, however, should not turn simply on a point of the compass; the fact that the store Lanno decided to visit was to the north of his workplace, rather than to the south, is not the controlling factor in this case. Instead, the modern rationale for respondeat superior requires that liability be hinged on the foreseeability and substantiality of the employee's departure from his employer's business. Where, as here, the deviation is insubstantial and foreseeable, the doctrine of respondeat superior will apply.

The judgment is affirmed.

Thompson, J., and McVittie, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.