[No. B009194. Second Dist., Div. Three. June 27, 1986.]

PATRICIA M. COMSTOCK HENDERSON, Plaintiff and Appellant, v. ADIA SERVICES, INC., Defendant and Respondent.

COUNSEL

Allan B. Weiss and Jock R. Davidson for Plaintiff and Appellant.

John E. Ford and Jeffrey Bruce Held for Defendant and Respondent.

OPINION

**DANIELSON, Acting P. J.**—Plaintiff and appellant Patricia M. Comstock Henderson appeals from the summary judgment entered in favor of defendant, cross-complainant and respondent Adia Services, Inc. in an action

for damages for personal injuries. The sole question presented on this appeal is whether one Rodger Wrede was within the scope of his employment by defendant when he caused an automobile accident resulting in injury to plaintiff. We conclude the trial court properly determined that the accident was without the scope of the employment relationship, and affirm the judgment.

FACTS

Contrary to plaintiff's assertions, the material facts are substantially undisputed.[1]

Plaintiff was injured on November 19, 1981, when her vehicle was struck from the rear by a vehicle driven by Wrede. At the time of the accident, Wrede was employed by defendant, a temporary employment agency, and was driving his own automobile to a temporary job packing stereos for Mitsubishi Electric Sales America.

Plaintiff filed an action for damages against Wrede and various Does. Following discovery, she amended the complaint pursuant to Code of Civil Procedure section 474, substituting defendant in place of a Doe. Defendant answered, denying liability, and filed a cross-complaint for indemnification against Wrede.

---

[1]Plaintiff points to certain answers to interrogatories and deposition testimony as establishing evidentiary conflicts. We have examined the relevant documents and fail to perceive the claimed inconsistencies. Plaintiff refers to interrogatory number 3 of the second set of interrogatories propounded to Wrede, which reads:

"3. At the time you first became employed with ADIA SERVICES, INC., did you indicate that you had a motor vehicle to transport yourself to and from jobs that they would send you on?

"If so, state whether a motor vehicle was necessary to be employed by ADIA SERVICES, INC."

Wrede answered the interrogatory: "3. Yes."

This singular answer to a compound question indicates only that Wrede failed to complete his answer to the interrogatory. Plaintiff apparently did not request a further answer.

Interrogatories 4 and 5 of the same set refer only to the agreed upon fact that Wrede was on his way to work at Mitsubishi when the accident occurred. Interrogatory 13 of the second set of interrogatories propounded to defendant is not included in the present record. Defendant objected to this interrogatory, which apparently made reference to Mitsubishi, but nonetheless answered, "Yes, November 18, 1981." Wrede first reported to work at Mitsubishi on that date.

Plaintiff contends that an inference can be drawn from the deposition testimony of Diane Chapman, defendant's office supervisor, that Wrede was required to drive to work. This is simply not so.

Other matters listed by plaintiff as in dispute are facts as to which there is no dispute. Plaintiff's claim is that these facts, taken together, establish that Wrede's use of his automobile to reach Mitsubishi on the morning of the accident was foreseeable to defendant. (See discussion, *infra*.)

Following further discovery, defendant filed a motion for summary judgment or, in the alternative, for summary adjudication of issues, supported by the declaration of Doreen R. Penfield, vice president of administration for defendant, which established that defendant did not dictate the manner in which Wrede reached his place of employment, compensate him for the time he spent traveling to and from the place of employment, or reimburse him for the costs of such travel. Wrede was paid on an hourly basis commencing upon his arrival at the jobsite. He was not required to drive in the performance of his job duties.

Plaintiff filed opposition to the motion, supported by certain discovery documents establishing, in pertinent part, that defendant kept records as to the method or methods of transportation utilized by its employees, and provided them with directions to their various jobsites as needed.

Following a hearing held on September 13, 1984, the trial court granted defendant's motion for summary judgment. Notice of the court's ruling was mailed to plaintiff on October 5, 1984; the order granting summary judgment and dismissing the action against defendant was filed on October 19, 1984; plaintiff filed a timely notice of appeal on December 4, 1984.

CONTENTIONS

Plaintiff contends the trial court erred in granting defendant's motion for summary judgment, in that there is a triable issue of fact as to whether Wrede's tort was committed in the course and scope of his employment by defendant so as to render defendant liable therefor pursuant to the doctrine of respondeat superior. In support of her contention, plaintiff argues that the "going and coming" rule does not apply because Wrede's conduct in driving his own vehicle to a job site assigned by defendant was foreseeable, and constitutes a special errand for defendant.

Defendant contends that application of the "going and coming" rule may be determined on a motion for summary judgment; and that Wrede was traveling to work at the time of the accident and, therefore, was not within the course and scope of his employment.

DISCUSSION

*The Scope of Employment Issue Was Properly Determined on a Motion for Summary Judgment*

 Summary judgment is appropriate only if no material fact issue exists or where the record establishes as a matter of law that a cause of action

asserted against a party cannot prevail. (*Taylor* v. *Fields* (1986) 178 Cal.App.3d 653, 659 [224 Cal.Rptr. 186].) While it is true that the question whether a tort was committed in the scope of the tortfeasor's employment is ordinarily arguable, and therefore one of fact for the jury's determination, where there is no dispute as to the relevant facts, and conflicting inferences cannot be drawn from those facts the question becomes one of law. (*Ibid.*; *Caldwell* v. *A.R.B., Inc.* (1986) 176 Cal.App.3d 1028, 1035 [222 Cal.Rptr. 494]; *Alma W.* v. *Oakland Unified School Dist.* (1981) 123 Cal.App.3d 133, 138 [176 Cal.Rptr. 287].) Here, the trial court properly determined that the material facts were not in dispute, and properly entertained the motion for summary judgment.

*The Accident Did Not Occur Within the Scope of Wrede's Employment*

■ Plaintiff relies primarily upon the foreseeability of Wrede's use of his personal automobile in traveling to the Mitsubishi jobsite, claiming this factor establishes that his journey was within the scope of his employment by defendant. We therefore examine the doctrine of respondeat superior with particular emphasis upon the role of foreseeability in determining questions of employer liability for employees' acts.

"Under the doctrine of respondeat superior, an employer is responsible for the torts of his employee if these torts are committed within the scope of employment. (Civ. Code, § 2338; *Johnston* v. *Long* (1947) 30 Cal.2d 54, 61 [181 P.2d 645].) The 'going and coming' rule acts to limit an employer's liability under respondeat superior. This rule deems an employee's actions to be outside the scope of employment when these actions occur while the employee is going to or returning from work. (*Carnes* v. *Pacific Gas & Elec. Co.* (1937) 21 Cal.App.2d 568, 571 [69 P.2d 998].) The 'going and coming' rule, in turn, has been limited in recent years. Under the modern rule, if the employee's trip to or from work 'involves an incidental benefit to the employer, not common to commute trips made by ordinary members of the work force,' the 'going and coming' rule will not apply. (*Hinman* v. *Westinghouse Elec. Co.* (1970) 2 Cal.3d 956 at p. 962 [88 Cal.Rptr. 188, 471 P.2d 988].) Thus in *Hinman, supra,* it was held that the 'going and coming' rule did not apply where the employer had made the commute part of the workday by compensating the employee for his travel time. Similarly, in *Huntsinger* v. *Glass Containers Corp.* (1972) 22 Cal.App.3d 803 [99 Cal.Rptr. 666], an employee was required to drive to and from work in order to have his vehicle available for company business. The court held that these circumstances, if confirmed by a jury, would support a finding that the employee's commute conferred an incidental benefit on the employer; a jury could therefore find that the commute fell within

the scope of employment." (*Lazar* v. *Thermal Equipment Corp*. (1983) 148 Cal.App.3d 458, 462-463 [195 Cal.Rptr. 890].)

In *Lazar,* the employer derived a special benefit from the employee's commute, which was made in a company vehicle for the purpose of having the vehicle available at the employee's home in case he received emergency after-hours calls from the employer's customers. The court found that the employee was acting in the scope of his employment in traveling to and from work, "conferring a tangible benefit on his employer," and held that the "going and coming" rule was inapplicable. (*Lazar* v. *Thermal Equipment Corp., supra,* 148 Cal.App.3d at p. 463.)

The court went on, in *Lazar,* to consider whether the employee's deviation from his normal route home for the purpose of accomplishing a personal errand removed his conduct from the exception to the "going and coming" rule. In resolving this question, the court examined the rationale for the modern doctrine of respondeat superior as follows: "The modern justification for the doctrine of respondeat superior was stated by Dean Prosser and, since *Hinman,* has been much quoted in California case law: 'Although earlier authorities sought to justify the *respondeat superior* doctrine on such theories as "control" by the master of the servant, the master's "privilege" in being permitted to employ another, the third party's innocence in comparison to the master's selection of the servant, or the master's "deep pocket" to pay for the loss, "the modern justification for vicarious liability is a rule of policy, a deliberate allocation of a risk. The losses caused by the torts of employees, which as a practical matter are sure to occur in the conduct of the employer's enterprise, are placed upon that enterprise itself, as a required cost of doing business. They are placed upon the employer because, having engaged in an enterprise which will, on the basis of past experience, involve harm to others through the torts of employees, and sought to profit by it, it is just that he, rather than the innocent injured plaintiff, should bear them; and because he is better able to absorb them, and to distribute them, through prices, rates or liability insurance, to the public, and so to shift them to society, to the community at large." (*Hinman* v. *Westinghouse Elec. Co., supra,* 2 Cal.3d 956, 959-960 [88 Cal.Rptr. 188, 471 P.2d 988], quoting Prosser, Law of Torts (3d ed. 1964) p. 471, fns. omitted.) Similarly, Harper and James stated the focus of the doctrine thus: '"We are not here looking for the master's fault but rather for risks that may fairly be regarded as typical of or broadly incidental to the enterprise he has undertaken. . . . Further, we are not looking for that which can and should reasonably be avoided, but with the more or less inevitable toll of a lawful enterprise."' (2 Harper and James, The Law of Torts (1956) pp. 1376-1377, quoted in *Hinman* v. *Westinghouse Elec. Co., supra,* 2 Cal.3d at p. 960.) Categori-

zation of an employee's action as within or outside the scope of employment thus begins with a question of foreseeability, i.e., whether the accident is part of the inevitable toll of a lawful enterprise." (*Lazar* v. *Thermal Equipment Corp.*, *supra*, 148 Cal.App.3d at pp. 463-464; italics in original.)

The *Lazar* court considered the foreseeability of the employee's deviation from his normal travel pattern in determining whether it took his conduct out of the otherwise applicable exception to the "going and coming" rule. Minor deviations from the employer's business are deemed foreseeable and remain within the scope of employment; substantial departures from the employer's business are unforeseeable and take the employee outside the scope of his employment. In *Lazar*, the employee's personal errand was found to constitute a minor, foreseeable deviation, and was thus within the scope of his employment. (*Lazar* v. *Thermal Equipment Corp.*, *supra*, 148 Cal.App.3d at p. 465.)

In *Avila* v. *Standard Oil Co.* (1985) 167 Cal.App.3d 441 [213 Cal.Rptr. 314], employees Meza and Hernandez violated a gas station rule by performing repairs during business hours on a motorcycle owned by Hernandez. Plaintiffs were injured when struck by a truck driven by Meza, who was on an errand to purchase wire needed for the motorcycle repairs. Plaintiffs sued Meza, Hernandez, the gas station owner and Standard Oil Company of California, alleging that at the time of the accident Meza and Hernandez were acting within the course and scope of their employment at the gas station. Standard Oil and the station owner successfully moved for summary judgment on the ground that there were no triable issues of fact upon which to impute liability to them as employers of Meza and Hernandez. The judgment was reversed on appeal. The court noted that Meza was never told of the company rule, and that Hernandez, who had not been reminded of it since he was first hired four years earlier, had received permission from his supervisor to keep the motorcycle, which the supervisor knew required repairs, at the station. The court concluded that "[t]hese facts present the question whether at the time of the accident Meza and Hernandez had express or implied permission to repair their own vehicles during their work shifts . . . ." (167 Cal.App.3d at p. 447.)

The *Avila* court also observed that even if there was a rule against such repairs, if the employees' conduct amounted to only minor deviations for personal or private purposes, as opposed to substantial or material deviations from duty for such purposes, they would still be considered within the scope of their employment. This distinction "depends upon whether the conduct engaged in was foreseeable as that term is used in the context of respondeat superior. The test of foreseeability is whether in the particular business setting involved, the employee's conduct '"is not so unusual or startling

that it would seem unfair to include the loss resulting from it among other costs of the employer's business." [Citation.]' (*Lazar* v. *Thermal Equipment Corp.* [1983] 148 Cal.App.3d 458, 464.)" (*Avila* v. *Standard Oil Co.*, *supra*, 167 Cal.App.3d at p. 448.) The court held: "it [was] a question of fact whether it was foreseeable Hernandez and Meza would perform repairs on the motorcycle and take such steps as necessary to make the repairs. Meza was instructed to follow Hernandez' directions. It is a question of fact whether under these circumstances it was foreseeable Hernandez would direct Meza to drive on an errand for Hernandez." (*Ibid.*; see also *Alma W.* v. *Oakland Unified School Dist.*, *supra*, 123 Cal.App.3d 133, 139-143; *Clark Equipment Co.* v. *Wheat* (1979) 92 Cal.App.3d 503, 520-522 [154 Cal.Rptr. 874].)

Each of the foregoing cases involved an initial determination that the employee was within the scope of his employment at the time when he engaged in the harm causing conduct. The foreseeability test was applied to conduct which deviated from employment purposes, to determine whether the deviation was sufficiently significant to take the employee's acts out of the employment relationship, i.e., whether in the context of the particular enterprise the employee's conduct was "'so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business.' [Citation.]" (*Lazar* v. *Thermal Equipment Corp.*, *supra*, 148 Cal.App.3d at p. 464.)

In the present case, we are concerned with the first of these determinations. It is not enough to say that defendant employer could foresee that Wrede would use his personal automobile to reach his jobsite; such a test would virtually eliminate the "going and coming" rule. The question here is whether Wrede's trip involved "an incidental benefit to the employer, not common to commute trips made by ordinary members of the work force" so as to take it out of the "going and coming" rule. (*Lazar* v. *Thermal Equipment Corp.*, *supra*, 148 Cal.App.3d at p. 462.)

Plaintiff's argument is, essentially, that the nature of defendant's business, and the manner in which it was conducted, distinguish this case from those in which the "going and coming" rule traditionally has been applied. Plaintiff emphasizes the facts that Wrede was the employee of defendant, a temporary employment agency, and sent out by defendant, albeit from his home, rather than defendant's office, to various businesses to perform services for which compensation was paid to defendant, who, in turn, paid Wrede for the services he performed on defendant's behalf.

Defendant did not defray Wrede's travel expenses or compensate him for travel time. (Cf. *Hinman* v. *Westinghouse Elec. Co.*, *supra*, 2 Cal.3d 956.)

Wrede was not required to furnish a vehicle for use on the job (cf. *Huntsinger Glass Containers Corp.*, *supra*, 22 Cal.App.3d 803), or to keep a company vehicle at his residence. (Cf. *Lazar* v. *Thermal Equipment Corp.*, *supra*, 148 Cal.App.3d 458; see also *Ducey* v. *Argo Sales Co.* (1979) 25 Cal.3d 707, 722-723 [159 Cal.Rptr. 835, 602 P.2d 755].) The only distinction between this case and the usual case applying the "going and coming" rule lies in the fact that Wrede did not report to the same location each day that he worked. Plaintiff urges this fact rendered Wrede's journey to his jobsite a "special errand" or "special mission." Activities which have been considered special errands include "picking up or returning tools used on the job, attendance at an employment social function when an employee's attendance is expected and it benefits the employer, and a trip in which the employee responds to a service call when the employee is on call for the employer's business. [Citation.]" (*Caldwell* v. *A.R.B., Inc.*, *supra*, 176 Cal.App.3d 1028, 1036-1037.)

In *Le Febvre* v. *Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 386 [71 Cal.Rptr. 703, 445 P.2d 319], a volunteer fireman who was an employee for workers' compensation purposes (Lab. Code, § 3361), suffered fatal injuries when his car went off the road while he was driving from his home to one of the fire department's stations to attend an evening fire drill. His duties as a volunteer fireman were to respond to fires at any location and to attend drills and meetings at different stations. The court held, "from the moment he left his home, or any other point from which he might have been summoned, to engage in firefighting or in training drills in the district, he was acting within the scope of his employment by the volunteer fire department. Accordingly, the fact that he met his death while traveling on the public highway en route to an evening drill does not bring the going and coming rule into play. The travel was plainly required by the employment, the travel risk was incident to the employment, and Le Febvre's death is compensable. [Citations.]" (*Id.*, at pp. 388-389.)

In *Hinojosa* v. *Workmen's Comp. Appeals Bd.* (1972) 8 Cal.3d 150 [104 Cal.Rptr. 456, 501 P.2d 1176], the court characterized Le Febvre's travel as a "special journey" (*id.*, at p. 158) to be distinguished from "the ordinary, local commute that marks the daily transit of the mass of workers to and from their jobs; the employment, there, plays no special role in the requisites of portage except the normal need of the presence of the person for the performance of the work." (*Id.*, at p. 157.)

We are mindful of the fact that *Le Febvre* is a workers' compensation case. "In the 'going and coming' cases, the California courts often cite tort and workers' compensation cases interchangeably. As Mr. Witkin points out, however, 'This practice has been questioned, for compensation rules

were developed from a distinct social philosophy, with fault eliminated as a test, and liberal construction of the act required.' (1 Witkin, Summary of Cal. Law [(8th ed. 1973)], § 167, p. 766; [additional citations].)" (*Ducey* v. *Argo Sales Co., supra,* 25 Cal.3d 707, 722; *Caldwell* v. *A.R.B., Inc., supra,* 176 Cal.App.3d 1028, 1035.)

In *Hinman* v. *Westinghouse Elec. Co., supra,* 2 Cal.3d at page 962, footnote 3, the court stated that the two tests are closely related, though not identical. This court has also previously recognized the distinction between them. (*Church* v. *Arko* (1977) 75 Cal.App.3d 291, 298-300 [142 Cal.Rptr. 92].) In *Church,* the employee's commute differed from the usual commute in that his hours were not fixed, although he did travel to a fixed place of business. There, as here, the appellant, in effect, argued "that where an employee finds it convenient or even essential to use an automobile to travel to and from his place of employment, the 'scope of employment' begins and ends with the round trip to and from his place of employment." (*Id.,* at p. 301.) We declined to accept such a broad principle of liability. Nor are we prepared to extend the employer's liability to the situation at bench, where Wrede worked normal shifts (cf. *Le Febvre* v. *Workmen's Comp. Appeals Bd., supra,* 69 Cal.2d 386, 388), there was nothing "extraordinary" about his commute on the date of the accident (*Santa Rosa Junior College* v. *Workers' Comp. Appeals Bd.* (1985) 40 Cal.3d 345, 354 [220 Cal.Rptr. 94, 708 P.2d 673]), and there was no requirement, express or implied, that he use his automobile to reach his assigned jobsite.

DECISION

The judgment is affirmed.

Arabian, J., and Mills, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.