Filed 2/2/21  Barron v. Galvin CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| SHELLY BARRON et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>GERALD GALVIN,<br><br>Defendant and Respondent. | F078699<br><br>(Super. Ct. No. 14CECG01179)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Donald S. Black, Judge.

Accident, Injury and Medical Malpractice Attorneys of California and Jeffrey D. Bohn for Plaintiffs and Appellants.

Wilkins, Drolshagen & Czeshinski, Michael J. Czeshinski and James H. Wilkins for Defendant and Respondent.

-ooOoo-

Appellants Shelly and Vincent Barron (collectively, the Barrons) were involved in a car accident with Gerald Galvin, the police chief of the City of Mendota (City).  Galvin, who was driving a city-owned unmarked police vehicle, was on his way home from a Fresno television station, where he gave an interview in his capacity as police chief.  The Barrons filed negligence claims against Galvin and the City, but they failed to comply with the Government Claims Act, Government Code section 810 et seq. (the Act), before

filing suit. The Barrons subsequently dismissed the City from the action and alleged Galvin was individually liable. Galvin moved for summary judgment on the ground he was acting within the course and scope of his employment when the accident occurred; therefore, the Barrons' failure to comply with the Act barred their action. The trial court granted the motion and entered judgment in Galvin's favor.

On appeal, the Barrons contend there are triable issues of fact that preclude summary judgment, and, in any event, their lawsuit is not barred because the going and coming rule applied to Galvin's commute, thereby taking it outside the scope of his employment. We conclude, as a matter of law, that Galvin committed the alleged tort within the scope of his employment. Consequently, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In August 2012, Galvin was employed by the City as its police chief. The City provided Galvin with a city-owned vehicle for official business use during work hours; the City paid for fuel and maintenance. The City permitted Galvin to use the vehicle to commute to and from work to allow him to respond to department-related business outside regular work hours, but he was not authorized to use it for personal purposes. The vehicle, an all-white sedan with government exempt plates, was an "unmarked" official emergency police vehicle equipped with sirens and a police radio but without police signage on the front doors.

As police chief, Galvin was always on call so he could respond to any incident for which a law enforcement response was requested, including conducting interviews in law enforcement matters. According to Galvin, often during his commute to and from work—which was approximately 50 miles each way—he was required to take law enforcement action when crimes, law enforcement incidents, or accidents occurred in his presence. While commuting, Galvin was always identifiable as a peace officer; he wore his duty belt and incidentals, displayed his badge, and had his duty weapon, which Galvin declared was required of him.

2.

According to the Mendota Police Department's "Vehicle Use Policy," which is part of its "Law Enforcement Services Manual," when driving an assigned vehicle to and from work outside the Mendota Police Department's jurisdiction, "an officer should avoid becoming directly involved in enforcement actions except in those circumstances where a potential threat to life or serious property damage exists (see the Off-Duty Law Enforcement Actions Policy and the Law Enforcement Authority Policy)." Officers, however, "may render public assistance (e.g., to a stranded motorist) when deemed prudent." In addition, when an officer is "driving a marked City-owned vehicle," the officer "shall … be armed, appropriately attired and carry their department-issued identification. Officers should also ensure that department radio communication capabilities are maintained to the extent feasible."

On August 1, 2012, Galvin was interviewed at the Univision television station in Fresno in his capacity as the City's police chief. The interview was related to a law enforcement matter; such interviews were part of Galvin's regular duties as police chief.[1] In his February 2017 deposition, Galvin testified that on the day of the accident, he arrived at work in Mendota at 8:00 a.m. and left early to make the appointment at Univision, which he said was around 4:00 p.m., although he did not remember the exact time. Galvin further testified he did not remember what exactly the interview was for or the exact subject matter, although he recalled it was "certainly police related." Galvin said he met with a female reporter, but he could not remember anything more about the interview. He did not know the name of the person who interviewed him and said there may have been more than one person involved. He did not believe it was a videotaped

---

[1] In support of the motion, Galvin offered a video recording of a Univision television news piece, which is primarily in Spanish, about the closure of outlying Fresno courthouses, including Mendota's courthouse, that included interview clips of Galvin speaking in English while in his police uniform. Galvin declared the video contained an excerpt from the television interview he gave on August 1, 2012, while his attorney declared Univision produced the video recording in response to a March 2017 subpoena from the Barrons' attorney.

interview, and he did not remember being tape or video recorded. He did not know how the interview was arranged or who arranged it; he could have arranged the interview himself or he could have been contacted by Univision—he did not recall.

After completing the interview, Galvin, who was wearing his uniform, was driving home in his city-owned vehicle when the accident involving the Barrons' vehicle occurred. Galvin declared that, despite being on his way home, he was on duty because he was wearing his uniform and he was acting in the scope of his employment with the City.

In January 2013, Shelly submitted a claim to the City for injuries she allegedly sustained in the accident, naming both Galvin and the City. The claim was deemed rejected when the City did not act on it, which occurred more than six months before the commencement of this action. Vincent did not submit a claim to the City in connection with the accident.

The Barrons filed suit against Galvin and the City in April 2014, alleging causes of action for motor vehicle and general negligence. The Barrons alleged that at about 4:40 p.m. on August 1, 2012, Galvin rear-ended their vehicle, which Shelly was driving, and in which Vincent was a passenger, in Fresno, and, as a result, Shelly suffered injuries and Vincent suffered loss of consortium. In the first cause of action, the Barrons checked the box indicating Galvin was acting in the course and scope of his employment with the City at the time of the accident, while the second cause of action alleged the City had granted Galvin permission to use the city-owned vehicle.

Galvin and the City demurred to the complaint, asserting the Barrons' claims were time-barred because they failed to comply with the Act. In response, the Barrons filed a first amended complaint (FAC), which alleged the same two causes of action against Galvin, but removed the City as a defendant and no longer alleged Galvin was acting in the course and scope of his employment at the time of the accident. The Barrons thereafter dismissed the City from the action.

4.

Galvin demurred to the FAC, arguing it was a sham pleading and the facts alleged in the original complaint regarding the scope of employment should be read into the FAC. Galvin contended that once that was done, the demurrer would have to be sustained based on the Barrons' failure to allege compliance with the Act. The trial court sustained the demurrer without leave to amend and judgment was entered in Galvin's favor. On the Barrons' appeal from the judgment, we reversed. We concluded the Barrons were permitted to plead in the alternative and the removal of one factual basis of liability, namely, that Galvin was acting in the scope of employment did not preclude the Barrons from pursuing in good faith the alternative claim for individual liability. (*Barron v. Galvin* (F071085, July 14, 2016) [nonpub. opn.].)

Galvin thereafter answered the FAC, alleging the Barrons' failure to comply with the Act as an affirmative defense. Galvin then moved for summary judgment on the FAC, arguing the Barrons were required to comply with the Act because he was driving his official emergency police vehicle within the scope of his employment when the accident occurred, as, among other things, his commute conferred an incidental benefit on the City and he was on a special errand. Galvin asserted any claims against him were time-barred because Shelly failed to commence this lawsuit within six months after rejection of her claim and Vincent failed to present any claim.

The Barrons opposed the motion, arguing the "going and coming" rule applied to Galvin, placing him outside the scope of employment during his commute home, and there were triable issues of fact as to whether the incidental benefit and special errand exceptions to that rule applied. The Barrons filed written objections to the declarations offered in support of the motion.

The trial court issued a tentative ruling denying the motion on the basis there were triable issues of fact as to whether the "going and coming" rule applied. In the tentative ruling, the trial court stated it intended to overrule the Barrons' evidentiary objections, except four of them, which it intended to sustain.

5.

Following oral argument on the motion, the trial court took the matter under submission. The trial court subsequently issued a written ordering granting the motion, finding the undisputed facts showed the City derived a special benefit from Galvin's commute; therefore, the "going and coming" rule was inapplicable and Galvin was acting in the course and scope of his employment when the accident occurred as a matter of law. The trial court did not rule on the Barrons' evidentiary objections. The trial court entered judgment in Galvin's favor.

## **DISCUSSION**

### **I.       Standard of Review**

We review orders granting summary judgment de novo. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767; *Village Nurseries v. Greenbaum* (2002) 101 Cal.App.4th 26, 35.) A motion for summary judgment is properly granted if the moving papers establish there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc.,[2] § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).)

As the moving defendant, Galvin had the initial burden to show the causes of action alleged against him were without merit by showing there is a complete defense to the causes of action. (§ 437c, subd. (p)(2).) Once Galvin met his initial burden, the burden shifted to the Barrons to produce evidence demonstrating the existence of a triable issue of material fact. (*Ibid*.; *Aguilar*, *supra*, 25 Cal.4th at p. 849.) If the Barrons were unable to do so, Galvin was entitled to summary adjudication as a matter of law and the motion was properly granted. (*Kincaid v. Kincaid* (2011) 197 Cal.App.4th 75, 82.)

Significant to the case presently before us is the principle that on summary judgment "the court may not weigh the plaintiff's evidence or inferences against the defendants' as though it were sitting as the trier of fact…." (*Aguilar*, *supra*, 25 Cal.4th at p. 856.) The court may, and in fact "must … determine what any evidence or inference

---

[2]       Undesignated statutory references are to the Code of Civil Procedure.

could show or imply to a reasonable trier of fact." (*Ibid.*, italics omitted.)  To state this a bit differently, the court does not determine whether an opposing plaintiff's evidence is credible, but rather determines what inference a reasonable trier of fact could draw from that evidence if the trier of fact were to believe that evidence.  (See *Colarossi v. Coty US Inc.* (2002) 97 Cal.App.4th 1142, 1153–1155.)

On appeal, our task is to independently determine whether a triable issue of material fact exists and whether the moving party is entitled to judgment as a matter of law.  (*Brantley v. Pisaro* (1996) 42 Cal.App.4th 1591, 1601.)  "We independently review the parties' papers supporting and opposing the motion, using the same method of analysis as the trial court.  Essentially, we assume the role of the trial court and apply the same rules and standards."  (*Kline v. Turner* (2001) 87 Cal.App.4th 1369, 1373.)  In so doing, we liberally construe the opposing party's evidence, strictly construe the moving party's evidence, and resolve all doubts in favor of the opposing party.  (*Johnson v. American Standard, Inc*. (2008) 43 Cal.4th 56, 64; *Saelzler v. Advanced Group 400*, *supra*, 25 Cal.4th at p. 768.)  "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof."  (*Aguilar*, *supra*, 25 Cal.4th at p. 850, fn. omitted.)

Here, while the trial court issued tentative rulings on the Barrons' evidentiary objections, it did not rule on them at the hearing on the motion or in its written order granting the motion.  When "the trial court fails to rule expressly on specific evidentiary objections, it is presumed that the objections have been overruled, the trial court considered the evidence in ruling on the merits of the summary judgment motion, and the objections are preserved on appeal."  (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 534 (*Reid*).)  "[T]he burden [is] on the objector to renew the objections in the appellate court."  (*Ibid.*, fn. omitted.)

The Barrons renew their objections on appeal, arguing the trial court improperly admitted and considered incompetent evidence pertaining to: (1) the underlying purpose for Galvin's use of the vehicle; (2) whether Galvin's use of the vehicle conferred any benefit on the City; and (3) whether Galvin completed a special errand for the City prior to the collision. In their opening brief's statement of facts, the Barrons discuss the evidence they claim was improperly admitted, state the grounds for their objections, and sometimes explain the basis for them.

The Barrons assert we should review their evidentiary objections de novo, as in *Reid*, where the trial court failed to rule on evidentiary objections. Our Supreme Court noted that the appellate court, which ruled on the objections under a de novo standard, had no occasion to determine whether the trial court abused discretion it never exercised and de novo review was consistent with the general standard of review applicable to summary judgment rulings. (*Reid*, *supra*, 50 Cal.4th at p. 535.) The Supreme Court, however, declined to decide "generally whether a trial court's rulings on evidentiary objections based on papers alone in summary judgment proceedings are reviewed for abuse of discretion or reviewed de novo." (*Ibid*.) Our review of the Barrons' objections will be set forth in the portions of this opinion where the objected-to evidence affects whether the parties have established their factual assertions. We do not decide the appropriate standard of review because under either standard, there is no error.

## II. The Government Claims Act

The Act requires a plaintiff to timely file a claim for money or damages with the public entity as a condition precedent to filing a lawsuit against the public entity. (Gov. Code, § 911.2; *State of California v. Superior Court* (2004) 32 Cal.4th 1234, 1237.) The failure to do so bars the plaintiff from suing that entity. (Gov. Code, § 945.4; *State of California v. Superior Court*, at pp. 1237, 1239.) If the plaintiff files a claim with the public entity but the public entity fails to take action on it, the claim is deemed rejected and the plaintiff must file a complaint against the public entity within six months after

8.

receiving written notice of the deemed rejection. (Gov. Code, §§ 912.4, 913, subd. (a), 945.6, subd. (a)(1).)

The same requirements apply when bringing an action against public and former public employees. If an action against a public entity is barred by the failure to file a timely claim, then an action against a public employee of that entity "for injury resulting from an act or omission in the scope of his employment" is also barred. (Gov. Code, § 950.2.) Moreover, if a claim has been presented to the public entity, a suit against a public employee must be commenced within the time prescribed under Government Code section 945.6. (Gov. Code, § 950.6, subd. (b).) A plaintiff must allege facts demonstrating or excusing compliance with the Act's claims presentation requirement, otherwise the complaint is subject to a demurrer for failure to state a cause of action. (*State of California v. Superior Court*, *supra*, 32 Cal.4th at p. 1239.)

Here, the FAC alleged causes of action against Galvin as an individual and did not allege compliance with the Act's procedures. Moreover, it is undisputed that while Shelly filed a claim with the City, she did not file this lawsuit within six months of the rejection of her claim, and Vincent never submitted a claim to the City. Thus, if Galvin was acting within the "scope of his employment as a public employee" when the accident occurred, the Barrons' lawsuit is barred. (Gov. Code, § 950.2.)

## III. The Going and Coming Rule and Special Errand Exception

Under the doctrine of respondeat superior, an employer is liable for torts its employees commit within the scope of their employment. (*Halliburton Energy Services, Inc. v. Department of Transportation* (2013) 220 Cal.App.4th 87, 93–94.) While California courts interpret the scope of employment broadly under the respondeat superior doctrine (*Farmers Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992, 1004), there are exceptions to the doctrine (*Morales-Simental v. Genentech, Inc.* (2017) 16 Cal.App.5th 445, 452 (*Morales-Simental*)). One such exception is the going and coming rule, which provides that an employee is typically outside the scope of

9.

employment when commuting to and from work. (*Ibid.*) "The rationale for the rule is that the employment relationship is suspended from the time the employee leaves work until he or she returns because an employee ordinarily renders no service to the employer while traveling." (*Pierson v. Helmerich & Payne Internat. Drilling Co.* (2016) 4 Cal.App.5th 608, 618 (*Pierson*).)

The going and coming rule, however, has its own limitations or exceptions. (*Lazar v. Thermal Equipment Corp.* (1983) 148 Cal.App.3d 458, 462.) As applicable here, the going and coming rule will not apply where the employee's commute " 'involves an incidental benefit to the employer, not common to commute trips made by ordinary members of the workforce.' " (*Ibid.*) It also will not apply where the employee is "performing an errand either as part of his regular duties or at the specific order or request of his employer." (*Morales-Simental*, *supra*, 16 Cal.App.5th at p. 452.)

"The going and coming rule and its exceptions do not set forth a formula of automatic application. [Citation.] Accidents involving employees traveling to and from work, or engaged in other types of travel, arise in so many varying circumstances that the application of the going and coming rule depends upon the facts of the particular case." (*Pierson*, *supra*, 4 Cal.App.5th at p. 620.) "[E]ach case should be adjudged on its own unique facts." (*Hinojosa v. Workmen's Comp. Appeals Bd.* (1972) 8 Cal.3d 150, 155.) "Generally, whether an employee is within the scope of employment is a question of fact; however, when the facts of a case are undisputed and conflicting inferences may not be drawn from those facts, whether an employee is acting within the scope of employment is a question of law." (*Blackman v. Great American First Savings Bank* (1991) 233 Cal.App.3d 598, 602.)

We begin with the special errand exception because we find it dispositive.[3] "An exception to the going and coming rule occurs when an employee commits a negligent

---

[3] While the trial court found the incidental benefit exception applied to Galvin's trip and did not rule on the special errand exception, the parties addressed both exceptions in the trial court and on appeal. We may affirm the trial court's ruling on any correct legal

10.

act while engaged in a 'special errand' or a 'business errand' for the benefit of his or her employer while commuting." (*Sumrall v. Modern Alloys, Inc.* (2017) 10 Cal.App.5th 961, 968, fn. omitted.) Under this exception, the employee is within the scope of employment if the employee is performing a special errand either as part of his or her regular duties or at the employer's specific order or request during a commute to or from home. (*Pierson*, *supra*, 4 Cal.App.5th at p. 632; *Boynton v. McKales* (1956) 139 Cal.App.2d 777, 789.)[4] In that situation, "the employee is considered to be in the scope of his employment from the time that he starts on the errand until he has returned or until he deviates therefrom for personal reasons." (*Ibid*.) Put another way, "[t]he errand is considered to continue during the entire trip home, unless the employee so deviates from the trip as to completely abandon the mission." (*Tognazzini v. San Luis Coastal Unified School Dist.* (2001) 86 Cal.App.4th 1053, 1057.) The employee need not be directly engaged in his or her job duties; also included are errands that incidentally or indirectly benefit the employer. (*Boynton v. McKales*, *supra*, 139 Cal.App.2d at p. 789.) It is essential, however, that the errand be either part of the employee's regular duties or undertaken at the employer's specific request. (*Morales-Simental*, *supra*, 16 Cal.App.5th at pp. 452–453.)

---

theory if the parties have adequately addressed the theory in the trial court and were provided the opportunity to address the theory on appeal. (*California School of Culinary Acts v. Lujan* (2003) 112 Cal.App.4th 16, 22; § 437c, subd. (m)(2) [before a reviewing court affirms an ordering granting summary judgment on a ground the trial court did not rely on, "the reviewing court shall afford the parties an opportunity to present their views on the issue …"].)

[4]     The exception also has been called the "business errand" or "special mission exception." (*Pierson*, *supra*, 4 Cal.App.5th at p. 633, fn. 6.) The court in *Sumrall* believed the term "business errand" was more precise and descriptive than the term "special errand," as the latter term implies the employer must make a specific request for a particular errand even though a "special errand" can be part of the employee's regular duties. (*Sumrall v. Modern Alloys, Inc.*, *supra*, 10 Cal.App.5th at p. 968, fn. 1; see CACI No. 3726 [business errand exception].)

Examples of when the special errand exception applies include when: (1) an employee goes on a business errand for the employer leaving from, and returning to, the workplace; (2) an employee is called to perform a task for the employer at an irregular time; or (3) the employer asks an employee to perform a special errand on the employee's way home from work. (*Felix v. Asai* (1987) 192 Cal.App.3d 926, 931–932.) Delivering mail to a post office on the way home from work is an example of a special errand. (*Id.* at p. 929.) Other activities held to constitute special errands include "picking up or returning tools used on the job, attendance at an employment social function when an employee's attendance is expected and it benefits the employer, and a trip in which the employee responds to a service call when the employee is on call for the employer's business." (*Caldwell v. A.R.B., Inc.* (1986) 176 Cal.App.3d 1028, 1036–1037.)

Galvin contends the special errand exception applies as a matter of law because it is undisputed the accident occurred while he was on his way home from the Univision interview, which he gave on a law enforcement matter in his capacity as the City's police chief, and such interviews are part of his regular duties. Essentially, Galvin's contention is that the interview was a special errand which he gave as part of his regular duties; therefore, his journey home was part of the errand and exempt from the going and coming rule. The Barrons contend there is a conflict in the evidence regarding whether Galvin was at a television interview at Univision before the accident and, if so, what the purpose of the interview was.

Galvin stated in his declaration in support of the motion that immediately before the accident, "I had conducted a television interview in my capacity as the Chief of Police for the City and on behalf of the City relating to a law enforcement matter at the Univision Television Station near the intersection of Palm and Herndon," and after completing the interview, "I had just left and was on my way directly home when the Subject Accident occurred." Galvin also declared that an excerpt from the recorded television interview he gave on August 1, 2012, was attached as an exhibit, which is a

12.

DVD containing a video recording of a Univision news piece that contains clips of Galvin commenting on the closure of Fresno County courts. This testimony establishes Galvin completed a television interview in his capacity as police chief on a law enforcement matter and was on his way home from the interview when the accident occurred.

In opposition to the motion, the Barrons submitted excerpts from Galvin's deposition, which was taken before their attorney subpoenaed records from Univision that resulted in the production of the Univision news piece. There, Galvin testified on the day of the accident, he left work early to get to an appointment at Univision, which he believed was around 4:00 p.m., where he gave an interview as part of his normal job duties. While Galvin could not remember the exact purpose of the interview or the subject matter, he recalled "it was certainly police related." He met with a female reporter but could not tell anything more about the interview. He did not know how the interview was arranged or how long it lasted. He did not "believe it was a taped interview like a camera" and he did not remember there being a tape or video recorder. Galvin did not know who arranged the interview. Galvin admitted this was something he personally could have called and arranged, or he could have been contacted by them, but he did not recall.

Galvin's deposition testimony does not create an issue of fact as to whether the Univision interview occurred immediately before the accident or whether the interview was police related. While Galvin could not remember the details of the interview or the exact subject matter at his deposition, he knew the interview occurred the day of the accident and recalled the interview was police related. This is entirely consistent with Galvin's declaration. That Galvin could not remember if the interview had been recorded or even believed that it had not does not create a triable issue of fact as to the purpose of the interview or that it occurred before the accident.

13.

In their opposition to the motion, the Barrons objected to statements in the declarations of Galvin and his attorney, Quentin Cedar, in which Galvin stated an excerpt from the recorded television interview he gave on August 1, 2012, was attached as an exhibit, and Cedar stated Univision produced the video recording in response to a subpoena from the Barrons' attorney. The Barrons asserted the exhibit was a "foreign language exhibit" pursuant to California Rules of Court, rule 3.1110(g), which provides: "Exhibits written in a foreign language must be accompanied by an English translation, certified under oath by a qualified interpreter." Noting that the video recording is in Spanish and Galvin provided no means to verify the content of the video, the Barrons renew this objection on appeal, without further argument or authority.

Galvin was not required to produce a translation of the news piece because the reporter's statements, which were in Spanish, are irrelevant to whether the special errand exception applies. The news piece is relevant because it helps explain why, on the day of the accident, Galvin was driving in Fresno and shows he was conducting police business. There is no need for a translation to establish these facts, as the video recording of the news piece shows Galvin was speaking in English while in his police uniform about a matter of concern to the police, namely, the closure of Fresno County courthouses, including Mendota's courthouse. While the Barrons contend it is unclear whether the interview was job related, the video recording includes shots of a letter, written in English, from the Fresno Madera Counties Police Chief's Association to the presiding judge of the Fresno County Superior Court concerning the courthouse closures; the letter is signed by a number of Fresno County sheriffs and police chiefs, including Galvin on the Mendota Police Department's behalf. Thus, the interview clearly was related to Galvin's job as the City's police chief.

The Barrons also contend it is unclear whether the video excerpt of Galvin's interview was "canned footage," thereby implying the interview may have occurred on a different day. They failed to present any evidence, however, to contradict Galvin's

14.

declaration that, on the day of the accident, he gave an interview at Univision in his capacity as the City's police chief on a law enforcement matter and the accident occurred when he was driving home following the interview. While the video recording does not itself establish when Galvin gave the interview, his uncontradicted declaration does.

Comparing this case to *Cragun v. Krossoff* (1941) 45 Cal.App.2d 480 (*Cragun*), the Barrons assert there are triable issues of fact concerning whether Galvin was on a journey of his own, outside the course and scope of his employment, when the accident occurred. In *Cragun*, a traveling salesperson whose territory was in the Central Valley ordinarily returned to San Francisco on the weekends, where he stayed at the same hotel, paying only for the time he occupied his assigned room. (*Id.* at pp. 482–483.) On the day of the accident, after having several drinks with a customer in Manteca, the salesman was cited for reckless driving. Concerned about his ability to drive to San Francisco, he hired a woman to drive him and she collided with another car in Oakland. (*Id.* at p. 483.)

The appellate court rejected the argument that a "travelling salesman is in the course and scope of his employment for the entire period of time between starting from and returning to his home or business headquarters." (*Cragun*, *supra*, 45 Cal.App.2d at p. 485.) The court noted in the cases the plaintiffs cited, the "facts and circumstances showed that the employee was on a roving commission, or had made a necessary stop, overnight or otherwise, in the interest or advancement of the employer's business, while en route to his home or place of business." (*Ibid.*) While the traveling salesman voted in San Francisco and usually stopped at the same hotel if a room was available, "in doing so he was no more than a transient guest, and it was not necessary that he should come to San Francisco for the business of his employer," as the purpose of the weekend trips was primarily for pleasure and he could have stopped anywhere without injuring his employer's interests. (*Ibid.*)

This case does not apply here because it does not address the special errand exception. The evidence shows Galvin was on his way home after conducting an

interview related to a law enforcement matter. As we have stated, under the special errand exception, the errand continues during the entire trip home, unless the employee deviates from the trip so much that he or she completely abandons the mission. (*Tognazzini v. San Luis Coastal Unified School Dist.*, *supra*, 86 Cal.App.4th at p. 1057.) There is nothing to suggest Galvin deviated in any way from his trip—according to his declaration, he was driving directly home from the interview when the accident occurred, which is within the scope of the exception.

The Barrons next contend there is a triable issue of fact as to whether the interview was undertaken at the City's express or implied request and for the City's benefit.[5] They contend this case is most like *Morales-Simental*. There, the employer asserted the employee, a shift lead tasked with hiring who was driving to his office in the predawn hours on his night off to review resumes when the accident occurred, was not performing a special errand as a matter of law because he was not acting on a special request from his employer or as part of his regular duties. (*Morales-Simental*, *supra*, 16 Cal.App.5th at pp. 453–454.) The plaintiffs contended there were triable issues of fact whether the shift lead was performing a special errand because (1) the shift lead could order himself to perform a special errand in connection with hiring, (2) certain emails were a request to perform a special errand, and (3) the shift lead's trip on his night off to review resumes was within his regular duties. (*Id.* at p. 454.)

On the first contention, the plaintiffs argued as a supervisorial employee tasked with hiring, the shift lead had authority to act on the employer's behalf "and, in essence, request himself to complete a special errand connected to that task." (*Morales-Simental*,

---

**5** The Barrons cite workers' compensation cases that address the "special mission" exception, which state generally three factors must be met: " '(1) the activity is extraordinary in relation to the employee's routine duties, (2) the activity is within the course of the employee's employment, and (3) the activity was undertaken at the express or implied request of the employer and for the employer's benefits.' " (*Lantz v. Workers' Comp. Appeals Bd.* (2014) 226 Cal.App.4th 298, 309–310.) The Barrons challenge only the third factor.

16.

*supra*, 16 Cal.App.5th at pp. 454, 456.)  The appellate court disagreed, pointing out the argument did not find any "support in the extensive body of going and coming case law, and we decline plaintiffs' invitation to expand the special errand exception in the manner they suggest.  What they propose is an invitation to self-serving pretense by anyone with a plausible claim to supervisorial authority." (*Id.* at p. 456.)  The court further explained this would expand the special errand rule "to allow employees at various levels to request special errands of themselves on behalf of their employers, thereby stripping the employer of the ability to control when it will be liable for an employee's off-shift activities." (*Ibid.*)

The appellate court also rejected the plaintiffs' other two arguments, as the emails did not establish the employer requested or expected he would drive to work that morning, and driving to his office on his day off to review resumes was not part of his regular duties. (*Morales-Simental*, *supra*, 16 Cal.App.5th at pp. 457–460.)  On the last point, the appellate court explained there was no evidence the employer ever expected the shift lead to come in outside his normal working hours to assist with hiring, and such an expectation could not reasonably be inferred from evidence that he sometimes worked overtime, attended scheduled work meetings, and communicated with coworkers outside of working hours. (*Id.* at p. 459.)  The court concluded that because the plaintiffs did not present any evidence the shift lead ever before made a special trip to his office to review resumes or perform any task connected to hiring, it could not be inferred that such a trip was part of his regular duties in hiring. (*Id.* at p. 460.)

The Barrons assert this case is like *Morales-Simental* because there is no evidence anyone from the City asked him to go to the interview and Galvin testified at his deposition that it was possible he arranged the interview himself.  Even if no one at the City expressly asked him to attend the interview and he arranged the interview himself, however, the evidence established that giving such interviews was part of Galvin's regular duties.  As Galvin declared, "[m]y regular duties as the Chief of Police for the

17.

City of Mendota, also included my conducting interviews in connection with law enforcement matters." Since conducting interviews was part of Galvin's regular duties, the City had an expectation he would attend interviews like the one he gave on the day of the accident, and even arrange for them himself when necessary, as he was the face of the City's police department with respect to matters of public interest. It is not necessary for the City to expressly ask him to attend the interview in order for the special errand exception to apply.

In sum, the evidence established Galvin was engaged in a special errand when he gave a job-related interview at Univision on the day of the accident as part of his regular duties. The Barrons ask us to draw inferences from the evidence that a reasonable trier of fact would not draw and which are not supported by the evidence. Since Galvin was on his way home from the interview when the accident occurred, he remained within the scope of the exception and, therefore, was within the course and scope of his employment. As such, the Barrons were required to comply with the Act and their failure to do so bars this action.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to Galvin.

DE SANTOS, J.

WE CONCUR:

DETJEN, Acting P.J.

MEEHAN, J.

18.