Filed 10/14/15  Delgado v. Las Lomas Spanish Congregation of Jehovah's Witnesses, San Diego, CA, Inc. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| KENNETH DELGADO, | D066606 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2013-00048375-CU-PA-CTL) |
| LAS LOMAS SPANISH CONGREGATION OF JEHOVAH'S WITNESSES, SAN DIEGO, CA, INC. et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Joel M. Pressman, Judge.  Affirmed.

Nassar Law, Gregory E. Nassar and John M. Van Dyke; The Zalkin Law Firm and Devin M. Storey, for Plaintiff and Appellant.

The McCabe Law Firm, James M. McCabe and Ryan M. McCabe; Morris Polich & Purdy and Pamela A. Palmer, for Defendants and Respondents Bancroft Spanish Congregation of Jehovah's Witnesses and Las Lomas Spanish Congregation of Jehovah's Witnesses, San Diego, CA, Inc.

Watchtower Bible and Tract Society of New York, Inc., Legal Department and Francis J. McNamara; The McCabe Law Firm, James M. McCabe and Ryan M. McCabe; Morris Polich & Purdy and Pamela A. Palmer, for Defendant and Respondent Watchtower Bible and Tract Society of New York, Inc.

Romelia Sojo was driving a car when she collided with bicycle rider Kenneth Delgado. At the time of the accident, Sojo had just finished her door-to-door preaching activity as a member of the Jehovah's Witnesses. After Delgado settled with Sojo, he sued two Jehovah's Witnesses entities: Watchtower Bible and Tract Society of New York, Inc. (Watchtower) and a local Jehovah's Witnesses congregation, Las Lomas Spanish Congregation of Jehovah's Witnesses (Las Lomas Congregation), claiming these entities were liable for Sojo's negligence under a respondeat superior theory. Delgado alleged Sojo was defendants' agent and was acting within the course and scope of this agency at the time of the accident. By consent, a third Jehovah's Witnesses entity, Bancroft Spanish Congregation of Jehovah's Witnesses (Bancroft Congregation), appeared in the action as a defendant.

The three defendants collectively moved for summary judgment. The court granted the motion, finding the undisputed facts showed Sojo was not defendants' agent and alternatively Sojo was not acting within the course and scope of an agency at the time of the accident. On appeal, Delgado challenges both of these determinations.

We conclude that even assuming the existence of an agency relationship between Sojo and one or more of the defendants, Sojo was acting outside the course and scope of

2

this relationship because the accident occurred after she had finished her activities for the day. Generally, a principal is not liable for an agent's negligence after the work is performed, and the asserted exceptions to this rule are inapplicable on the record before us. Accordingly, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

*Factual Summary*

We set forth the relevant facts in the light most favorable to Delgado, the party opposing the summary judgment. Because we assume, and do not decide, the existence of an agency relationship, we only briefly summarize the evidence relating solely to this issue. Additional facts pertinent to the scope-of-agency issue will be described in the legal discussion.

Sojo is a member of the Jehovah's Witnesses religion and the Bancroft Congregation. Jehovah's Witnesses congregations meet and worship in buildings known as " 'Kingdom Halls.' " The Bancroft Congregation shares its Kingdom Hall (located at 2580 K Street in San Diego) with three other congregations, one of which is the Las Lomas Congregation. Each Jehovah's Witnesses congregation is comprised of elders (spiritual leaders), ministerial servants (performing administrative tasks), pioneers, and publishers (rank and file members). Sojo is a pioneer, which differs from a publisher mainly in the commitment to devote a certain minimum number of hours (840 hours annually) to preaching work and it is considered an appointed position. Each of these positions is voluntary and unpaid.

3

Since about 2001, the Christian Congregation of Jehovah's Witnesses (CCJW) (headquartered in New York) has been responsible for the religion's policies and oversees the religion's governing body. Before that time, Watchtower was the managing entity. Watchtower currently serves as the publisher of Jehovah's Witnesses written materials.

Members of the Jehovah's Witnesses religion engage in door-to-door preaching known as "field service," during which members distribute religious literature and discuss the Bible and the word of God. Field service is a guided activity conducted according to the policies of the congregation elders and the governing entities, including CCJW. Generally, field service begins with the congregant attending a brief meeting, during which a particular territory is assigned. Jehovah's Witnesses members then go to the territories and perform the field service work in small groups. Members do not request donations during this work, but they may accept donations. Donations are sent to Watchtower through the local congregation. Jehovah's Witnesses members are generally required to record the amount of time they spend in field service, and submit monthly reports or timecards to the Congregation elders or the Congregation group overseer.[1]

On the accident date, at about 9:00 a.m., Sojo and three young women who are also Bancroft Congregation members (Miriam Morales, Lisbet Amezquita, and Maura Carretero) met at the Kingdom Hall building with a plan to perform field service. On that

---

[1]    In moving for summary judgment and on appeal, defendants strenuously argued that field service work is merely a reflection of a congregant's personal ministry and is not guided or directed by defendants or any other Jehovah's Witnesses entity. Because Delgado submitted contrary evidence, we are required to accept the truth of this evidence for purposes of evaluating the summary judgment.

day, the purpose of the field service was to distribute invitations to invite residents to a Jehovah's Witnesses memorial to be held at a nearby elementary school.  After they were given the invitations, Sojo and the other congregants were either told or decided on the particular territory where they would preach door-to-door.  That territory began at the intersection of 33rd Street and Martin Avenue, less than two miles from the Kingdom Hall.  Several other Bancroft Congregation members also participated in this field service.  Sojo drove to the neighborhood, but the record is unclear whether she took any of the other congregants in her car.

At about 9:45 a.m., the Bancroft Congregation members (including Sojo and the three young women) arrived at the assigned territory.  For about 90 minutes, they went door-to-door performing their preaching work and inviting the residents to the memorial.  At about 11:00 or 11:15 a.m., the four women completed their work for the day.  They were "standing around chatting . . . after preaching," and two of the women were going to walk home.  But Sojo offered to take them to have lunch with her at a Burger King restaurant and then drive them home after lunch.  The three women agreed with this plan.  If Sojo had not offered to take them home, the women would have walked home.

When she was driving to Burger King with the three women, Sojo collided with Delgado as he was riding his bicycle in a crosswalk.  The women waited for a police officer and ambulance, and then went to Burger King to have lunch.  After lunch, Sojo drove the three other women to their homes.

*Complaint and Summary Judgment Motion*

Delgado's claims at issue are against Las Lomas Congregation, Bancroft Congregation, and Watchtower.[2]  In a form complaint, Delgado alleged the accident was caused by Sojo's negligence in operating her vehicle while he was crossing the street on his bicycle.  Delgado alleged the accident caused him to suffer "severe" injuries, including to his left knee area.  He alleged that at the time of the accident, Sojo was "transporting herself and three others . . . in the course and scope of their employment for [defendants]."  Before filing the complaint, Delgado settled his negligence claim against Sojo and her husband (the vehicle owner).

Defendants collectively moved for summary judgment on three independent grounds:  (1) the federal and state Constitutions bar the lawsuit because Delgado's claims require an inquiry into the religious doctrine and religious beliefs of the Jehovah's Witnesses; (2) Sojo was not acting as defendants' agent on the date of the accident; and (3) Sojo was not acting within the scope of her agency at the time of the accident because she had completed her work.  In support, they proffered numerous documents, including Sojo's declaration; the deposition testimony of Sojo and the three other young women

---

[2]     Although Delgado did not name Bancroft Congregation in the complaint, Bancroft Congregation filed an answer, stating it was erroneously sued as Las Lomas Congregation.  Bancroft Congregation fully participated in the proceedings, including bringing the summary judgment motion.  The final judgment includes Bancroft Congregation as a prevailing party.  We thus consider the complaint to have been implicitly amended to include the Bancroft Congregation, and Bancroft Congregation to be a proper party to the judgment and a proper respondent in this appeal.

Delgado served CCJW as an additional defendant after the summary judgment motion was filed.  The parties stipulated to stay Delgado's action against CCJW pending the resolution of this appeal.

present on the date of the accident; and the declarations and deposition testimony of various Jehovah's Witnesses officials.

In opposing the summary judgment motion, Delgado countered that: (1) his claims did not require the court to inquire into Sojo's religious status or other religion-based issues; (2) Sojo was defendants' agent based on their control over her field service work, and defendants were essentially one entity and agents of one another; and (3) Sojo was acting within the course and scope of her agency at the time of the accident. In support, Delgado submitted additional portions of the deposition transcripts of Sojo and the three other young women; deposition transcripts of various Jehovah's Witnesses local and national officials; and numerous Jehovah's Witnesses documents received from defendants in response to discovery requests.

After considering the submitted documents and conducting a hearing, the court granted defendants' summary judgment motion. The court found: (1) "the evidence presented does not establish that Romelia Sojo [was] an agent of the . . . Defendants under any theory of agency"; and (2) even if she was an agent, the " 'Going-and-Coming Rule' " precludes liability because it was undisputed the accident occurred after she finished her ministry and was driving her friends to lunch. The court additionally found Las Lomas Congregation was not liable because the undisputed evidence showed Sojo has no relationship with this congregation. Based on these conclusions, the court found it unnecessary to reach the constitutional issues raised by defendants, and did not specifically rule on the parties' numerous evidentiary objections.

7

DISCUSSION

I. *Summary Judgment Standards*

Summary judgment is properly granted when there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) We review a summary judgment de novo. (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 60.) "We liberally construe the evidence in support of the party opposing summary judgment [citation], and assess whether the evidence would, if credited, permit the trier of fact to find in favor of the party opposing summary judgment under the applicable legal standards." (*Millard v. Biosources, Inc.* (2007) 156 Cal.App.4th 1338, 1346.) "We are not bound by the trial court's reasons for granting summary judgment because we review the trial court's ruling, and not its rationale." (*Avidity Partners, LLC v. State of California* (2013) 221 Cal.App.4th 1180, 1192.)

II. *Analysis*

Delgado contends the court erred in granting summary judgment because triable factual issues exist regarding whether Sojo was defendants' agent while performing her field service work, and whether defendants are liable despite that the accident occurred after Sojo completed her work for the day. We need not reach the agency issue, because even assuming Sojo was an agent of one or more of the defendants, the undisputed facts establish the going-and-coming rule bars liability in this case.

Under the respondeat superior doctrine, a principal is vicariously liable for tortious acts committed by agents in the course and scope of the agency. (*Moradi v. Marsh USA, Inc.* (2013) 219 Cal.App.4th 886, 894 (*Moradi*).) However, under the " ' "going and

coming" ' " rule, an exception applies when the agent is traveling to or from the workplace. (*Ibid*.) The agency relationship is considered " 'suspended' " during this travel time and thus the agent's actions are outside the scope of the agency as a matter of law. (*Hinman v. Westinghouse Elec. Co.* (1970) 2 Cal.3d 956, 961; *Tryer v. Ojai Valley School* (1992) 9 Cal.App.4th 1476, 1481 (*Tryer*); *Caldwell v. A.R.B., Inc.* (1986) 176 Cal.App.3d 1028, 1035.) The going-and-coming rule bars liability regardless whether the agent's conduct was foreseeable. (See *Henderson v. Adia Services, Inc.* (1986) 182 Cal.App.3d 1069, 1076.) "To hold an employer [or principal] vicariously liable the employee [or agent] must be ' "engaged in the duties which he was employed to perform" [or] "those acts which incidentally or indirectly contribute to the . . . service." ' " (*Tryer, supra*, 9 Cal.App.4th at p. 1481.)

Delgado recognizes that at the time of the accident, Sojo had completed her field service work for the day and she was driving on her own personal time to have lunch with her companions on her way home. But Delgado argues this case is not barred by the going-and-coming rule because Sojo's actions come within an exception to the rule referred to as the "incidental benefit" or "required-vehicle" exception.[3] This exception applies " 'if the use of a personally owned vehicle is either an express or implied condition of employment . . . , or if the employee has agreed, expressly or implicitly, to make the vehicle available as an accommodation to the employer and the employer has

---

[3] Although these labels are sometimes used interchangeably (see *Moradi*, *supra*, 219 Cal.App.4th at p. 895), Delgado's arguments are focused on the rule that is usually and more accurately described as the "required-vehicle" exception. We therefore use this label in discussing the exception.

"reasonably come to rely upon its use and [to] expect the employee to make the vehicle available on a regular basis while still not requiring it as a condition of employment." ' [Citation.]" (*Moradi, supra*, 219 Cal.App.4th at p. 895.) This exception requires more than a showing that the principal obtains a benefit from the agent's use of a vehicle. The party seeking to apply the exception must establish the principal—expressly or impliedly—required or depended on the agent's vehicle use as a necessary tool to accomplish its work objectives. (See *id.* at p. 899; *Tryer, supra*, 9 Cal.App.4th at pp. 1481-1482.)

In this case, defendants presented evidence that Sojo's use of her vehicle was not an express or implied condition of her field service work and that defendants did not depend on its use to accomplish their goals. This evidence showed that a large percentage of Bancroft Congregation members do not own a motor vehicle, and they generally perform their field services within walking distance of Kingdom Hall and their residences. This evidence also showed the Bancroft Congregation does not expect members to use their cars, and that other forms of transportation could be equally useful, including public transportation or walking. The nature of the work—"door-to-door" ministry—requires walking not driving. Although a vehicle could assist a person in traveling to the field service neighborhood (and Sojo often used her car to travel to the neighborhoods), defendants proffered facts showing the congregation members did not need to use a car, and instead could walk or use public transportation to reach an assigned neighborhood territory. The Bancroft Congregation members did not receive any form of

10

reimbursement such as gas money for using their vehicle to travel to the neighborhoods for field service work.

Delgado directs us to various items of evidence that he argues create a factual dispute on this issue. We have reviewed this evidence and determine it does not support Delgado's argument.

First, Delgado relies on a document entitled "ORGANIZED TO DO JEHOVAH'S WILL," published by Watchtower. The document is an informational handbook provided to Jehovah's Witnesses congregation members throughout the country. The document contains the following paragraph: "Many of Jehovah's servants today use automobiles for transportation to meetings and in field service. *In some areas* a car has become virtually indispensible in the ministry. As such, it should be kept clean and in good repair. Our homes and automobiles should testify that we are part of Jehovah's clean and holy people." (Italics added.)

Contrary to Delgado's assertions, this paragraph does not suggest Sojo was required to use her vehicle to travel to the field service work or that defendants rely on her vehicle to perform the field service. The document merely states that in "some areas" a car may be indispensible. But it does not state that the Bancroft Congregation is located in one of those areas. The undisputed facts are to the contrary—the evidence shows the field service work is performed primarily within the general area of where the congregants live and can be reached by walking or public transportation. The neighborhood where Sojo performed the field work on the accident date was close to the Kingdom Hall and to the members' residences.

11

We also find unavailing Delgado's reliance on the deposition testimony of Mario Moreno, an attorney for Watchtower, who was designated as the person most knowledgeable on certain Jehovah's Witnesses organizational matters. Moreno testified that he is generally aware of the legal principle that a volunteer can be considered an agent if there is sufficient control by the principal. He also discussed a letter sent to Congregation elders by CCJW, the corporate entity overseeing the Jehovah's Witnesses' governing body. The letter informs congregation elders that if they become aware that a congregation member is involved in a vehicle accident resulting in a "death or serious injury" while engaged in a congregation-related activity, the congregation elders should immediately contact the CCJW corporate legal department and should not communicate with "anyone" about the accident, including an "attorney, other driver, passenger, investigator or policeman." Moreno testified the elders were directed to refer these calls to the corporate legal office because "statements made by elders could be viewed as admissions by an agent . . . and we don't want them making statements about things that they don't know the legal implications . . . and answers to."

This evidence does not suggest that a vehicle is an express or implied requirement of field work. Even assuming CCJW's statements could be attributed to the particular defendants before us, the fact that an entity takes legal precautions to prevent inaccurate or unreviewed information from being transmitted to third parties does not suggest the entity is admitting or acknowledging responsibility for the acts of its agents or presumed agents when the agents have completed their work and are driving away from the field service location. Likewise, the fact that Moreno is aware that unpaid volunteers may be

12

considered agents of a principal and that "statistically" there are likely to be more car accidents because there are an increasing number of Jehovah's Witnesses in the United States does not provide factual support for an exception to the going-and-coming rule in this case.

We additionally find each of the judicial decisions relied upon by Delgado to be unhelpful to his position. (See, e.g., *Moradi, supra*, 219 Cal.App.4th 886; *Hinojosa v. Workmen's Comp. Appeals Bd.* (1972) 8 Cal.3d 150 (*Hinojosa*); *Stevens v. Roman Catholic Bishop of Fresno* (1975) 49 Cal.App.3d 877 (*Stevens*).)

In *Moradi*, a salesperson used her personal vehicle to travel to different clients' offices before, after, and during the workday as a necessary part of her job, and the employer reimbursed her for mileage and lease payments. (*Moradi, supra*, 219 Cal.App.4th at p. 892.) At the end of one business day, this employee drove home, intending to first stop for frozen yogurt and then a yoga class. (*Id.* at p. 892.) While turning into the yogurt shop parking lot, she collided with the plaintiff who was on his motorcycle. (*Id.* at pp. 892-893.) In concluding the employer could be held vicariously liable, the *Moradi* court found applicable the required-vehicle exception to the going-and-coming rule because the vehicle use was "*required*" for the job. (*Id.* at pp. 906, 907, 911.) The court distinguished the case from *Ducey v. Argo Sales Co.* (1979) 25 Cal.3d 707, in which our high court found the exception inapplicable where the vehicle was not a condition of the employment because the "job was not one that embraced driving, and [the employee] was not required to use her vehicle for field work" even though she occasionally ran errands for the employer. (*Id.* at p. 723; see *Moradi, supra*, at p. 912.)

13

The *Moradi* court also addressed the issue whether the fact that the employee was on a personal errand (yogurt/yoga) rendered the required-vehicle exception inapplicable. Based on a thorough examination of prior decisions, the *Moradi* court concluded that *if* the facts come within the required-vehicle exception *and if* the employee's deviation from the work/home commute is minor and foreseeable, the employer remains liable for any negligence under a respondeat superior theory. (*Moradi, supra*, at pp. 904-908.) Applying this rule, the court found the employee's "planned deviation—stopping for frozen yogurt and a yoga class—was 'so slight relatively that [we] can say that no conclusion other than that the [deviation] . . . was *not* a departure could reasonably be supported.' " (*Id.* at p. 911.)

The circumstances here are different. The undisputed evidence established defendants did not require or expect Sojo to use her vehicle to perform the field work. Thus the required-vehicle exception never came into play, and the issue whether the drive to Burger King was a minor or substantial or foreseeable deviation from her drive home is not material to the analysis.

Delgado's reliance on *Hinojosa, supra*, 8 Cal.3d 150 is also misplaced. In *Hinojosa*, the employer operated seven or eight noncontiguous ranches, and the employees were "required" to travel *in a vehicle* from one ranch to the other during the work day. (*Id.* at p. 152.) The hourly wages "started from the time [the workers] arrived at the job and continued until [they] departed for home, including the time spent in transit between the various . . . ranches." (*Ibid.*) Under these facts, the *Hinojosa* court found a worker injured while riding in an automobile between ranches came within the required-

14

vehicle exception to the going-and-coming rule and thus was entitled to workers' compensation benefits.  (*Id.* at pp. 160-162.)  The court reasoned "the instant case falls within the category of the extraordinary journey that varies from the norm because the employer for some special reason of his own requires a different transit, or means of transit or use of a car. . . .  '[T]he nature of the work made it necessary for an employee to have transportation during the work day as the employer shifted him from one ranch to another. . . .  The employer, in fact, acknowledged the benefit to himself by paying the employees' wages for the time of travel during the work day. . . .  The requirement for [the worker] furnishing transportation, while not express . . . was clearly implied.' "  (*Id.* at p. 160.)

This case is different because there was no showing it was necessary or required for Sojo to drive from place to place to perform her preaching activities.  The undisputed facts show that the congregation members were generally given one particular neighborhood to perform their door-to-door work (rather than multiple neighborhoods), and they were free to use public transportation or walk to the neighborhood.  The fact that Sojo often drove her own car for her own personal convenience, and sometimes took others with her, does not show this was necessary or required to perform the services, and/or that it provided defendants with a meaningful and necessary benefit.  (See *Henderson v. Adia Services, Inc., supra,* 182 Cal.App.3d at p. 1078.)

Delgado's reliance on *Stevens, supra*, 49 Cal.App.3d 877 is similarly misplaced.  In *Stevens*, a missionary Catholic priest from France was temporarily residing in Fresno to serve the needs of Basque Catholics living in the western United States and to assist

the Bishop of Fresno (Bishop) with caring for the Catholics within the diocese. (*Id.* at pp. 881, 884-885.) When the French priest was driving his car back to Fresno after a ministerial visit with a Catholic Basque family in a nearby city, he collided with another vehicle, resulting in the death of the occupants of the second car. (*Id.* at p. 881.) The heirs prevailed in a wrongful death action against the Bishop. (*Ibid.*) On appeal, the reviewing court found sufficient evidence to show the French priest was acting within the scope of his agency with the Bishop at the time of the accident, noting that the priest's work on the day of the accident "was of incidental benefit to the Bishop of Fresno." (*Id.* at p. 888.). In upholding respondeat superior liability, the court also impliedly rejected the argument that the priest's actions fell within the going-and-coming rule. (*Id.* at pp. 887-888.)

In this case, unlike in *Stevens*, Sojo was not required to use a car to accomplish her field service. The French priest was similar to the salesperson in *Moradi* driving to various different clients in one day as a necessary part of the enterprise. Unlike here, there was no evidence the priest could have performed his duties without the use of his vehicle and/or that he was "off duty" during his trip back home.[4]

---

[4]     In his reply brief, Delgado also discusses the recent decision in *Conti v. Watchtower Bible & Tract Society of New York, Inc.* (2015) 235 Cal.App.4th 1214, which concerned the issue of the Watchtower defendant's vicarious liability for a member's sexual abuse. *Conti*'s holding is not applicable on the particular issue before us (the required-vehicle exception). We likewise find defendants' reliance on *Gillet v. Watchtower Bible & Tract Society of Pennsylvania, Inc.* (2005) 913 So.2d 618 unhelpful because it involves different facts and an interpretation of Florida law.

We also find unavailing Delgado's discussion of the fact that *field service* provides benefits to defendant Watchtower. While these benefits may be relevant to the existence of an agency relationship, we have assumed an agency relationship between Sojo and one or more of the defendants. The focus of the analysis in determining the applicability of the required-vehicle exception concerns whether the principal expressly required the agent to use his or her own car and/or whether the principal relies on the agent's use of the car as a necessary incident to its enterprise. Absent such evidence, the fact that Sojo's field service work may provide a "benefit" to defendants does not trigger the required-vehicle exception.

Likewise, Delgado's assertions that it was foreseeable Sojo would eat or need to use the restroom during the field service work does not advance his position. The issue is not whether Sojo's activities *while she is performing the field service* are within the scope of her employment. The issue is whether her activities occurring *after she has finished the work* and is traveling on her own personal time fall within an exception to the going-and-coming rule. The question of foreseeability is not relevant to that consideration. For example, it may be foreseeable that an employee will stop at the gas station on the way home, but this fact does not create respondeat superior liability *unless* there is an exception to the going-and-coming rule such as the required-vehicle exception.

17

DISPOSITION

Judgment affirmed.  The parties to bear their own costs on appeal.


HALLER, J.

WE CONCUR:


BENKE, Acting P. J.


IRION, J.